LOLLEY, J.
 

 | ] Defendant, Allen Dale Cox, appeals a judgment from the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, where a jury found Cox guilty as charged of distribution of cocaine, a violation of La. R.S. 40:967, and conspiracy to distribute cocaine, violations of La. R.S. 40:979 and 40:967. Thereafter, Cox was sentenced to 24 years’ of imprisonment at hard labor for the distribution charge, with credit for time served and the first two years to be served without benefit of probation, parole, or suspension of sentence. Cox was also sentenced to 15 years of imprisonment at hard labor for the conspiracy to distribute cocaine to run concurrently. Cox was recommended for the Blue Walters Substance Abuse Program while serving his sentence. A timely mo
 
 *932
 
 tion for reconsideration of sentence was denied. After various delays and filings, Cox was granted this out-of-time appeal. For the following reasons, Cox’s convictions and sentences are affirmed.
 

 FACTS
 

 Working a “buy-bust” operation with the Metro Narcotics Unit, a multi-parish narcotics task force, a confidential informant (“C.I.”) arranged to contact a person whom she knew as “A.D.” to meet her at the Motel 6 located on Highway 165 in Monroe, Louisiana. The C.I. called A.D., later identified as Cox, and asked to purchase $100.00 worth of crack cocaine. Cox told the C.I. that he would meet her at the Motel 6 in approximately 20-25 minutes.
 

 The C.I. waited in a room that had been equipped with video surveillance and audio monitors which was in the middle of three adjoining 12rooms. The arrest teams were waiting in the outer rooms while other officers set up surveillance in the parking lot of the motel. Cox arrived at the motel as a passenger in a vehicle. Cox got out of the car and went directly to the C.I.’s room. Once inside the room, Cox told the C.I. that the individual who was driving the vehicle, later identified as Antonio Brown, did not know her and was not willing to come up to the room to give her the drugs. Cox told the C.I. that he would take her money to Brown and return with the drugs, to which the C.I. agreed.
 

 The officers posted outside saw Cox walk out to the balcony and drop something down to Brown. Brown then threw something back up to Cox. Cox went back inside the C.I.’s room and gave her crack cocaine. As Cox left the room, officers from the arrest teams immediately took him into custody. During the search incident to arrest, officers found a rock of cocaine in Cox’s pocket as well as a small bit of newspaper with hand-written notations of the C.I.’s hotel room number and telephone number.
 

 After a trial by jury, Cox was found guilty as charged for distribution of cocaine and conspiracy to distribute cocaine. This appeal ensued.
 

 LAW AND DISCUSSION
 

 Sufficiency of the Evidence
 

 In his first assignment of error, Cox alleges that there was insufficient evidence presented to convict him under a statute directed at punishing drug dealers. Cox argues that the laws are not intended to punish an addict who is used as a conduit, with minimal contact with the contraband, between a drug dealer and an informant.
 

 |sThe standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App. 2d Cir.01/09/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.02/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App. 2d Cir.01/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to ac
 
 *933
 
 cept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App. 2d Cir.02/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App. 2d Cir.02/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App. 2d Cir.01/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/09/06), 941 So.2d 35. This is equally applicable to the testimony of undercover drug agents.
 
 State v. Anderson,
 
 30,306 (La.App. 2d Cir.01/21/98), 706 So.2d 598.
 

 An individual is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipient. The state must show: (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance.
 
 State v. Kelley,
 
 36,602 (La.App. 2d Cir.01/29/03), 836 So.2d 1243;
 
 State v. Manning,
 
 30,809 (La.App. 2d Cir.06/24/98), 715 So.2d 668. To find one guilty of conspiracy to distribute cocaine, the state must show that there existed an agreement or combination of two or more persons for the specific purpose of transferring possession or control of the cocaine to an intended recipient.
 
 State v. Alexander,
 
 43,796 (La.App. 2d Cir.01/14/09), 2 So.3d 1168.
 

 In the instant case, the state called as its first witness Agent Curtis Dewey of the Ouachita Parish Sheriffs Office and a member of the Unit. Agent Dewey testified he and other members of the Unit arranged for the C.I. to make a drug purchase during a buy-bust operation conducted at the Motel 6 on February 3, 2005. Agent Dewey was the lead agent. In preparation for the operation, Agent Dewey testified that the three adjoining motel rooms were secured, and the C.I. was placed in the middle room and given five marked twenty-dollar bills totaling $100.00 to purchase crack cocaine. Video and audio surveillance devices were placed in the C.I.’s room to monitor the transaction. According to Agent Dewey, officers | .¡¡stationed in the adjoining rooms were monitoring the surveillance equipment and the C.I. and the room was searched for drugs prior to the beginning.
 

 Agent Dewey further testified that arrest teams were stationed in the adjoining rooms and additional officers were stationed in the parking lot of the motel for surveillance. At approximately 7:06 p.m., Cox arrived in a vehicle with Brown. Once the C.I. agreed, Cox took the money and walked out of the room. He returned to the room a few moments later, and after the transaction was completed Cox was immediately arrested outside the C.I.’s room. Agent Dewey collected and transferred the cocaine delivered to the C.I. to the crime lab for analysis. Agent Dewey testified that Brown was also arrested in connection with the case. At the time of his arrest, Brown had the “buy money” in his possession.
 

 Susan Rutledge, a forensic chemist employed by the North Louisiana Crime Lab, was qualified by the court as an expert in forensic chemistry and controlled dangerous substances. After discussing the protocols used in receiving the evidence, Rutledge testified that based on her testing, she determined that the substances submitted for analysis contained cocaine.
 

 Officer John Philly, a warrant officer for the Ouachita Parish Sheriffs Office, testified he assisted the Unit on the, night of
 
 *934
 
 this buy-bust operation. Officer Philly explained that he was in a van stationed in the well-lit parking lot of the motel. Officer Philly observed a vehicle occupied by two black males arrive at the motel. The passenger, Cox, exited the vehicle and proceeded to the C.I.’s room. According to Off. Philly, he saw Cox step on |(ito the balcony and drop something down to the driver of the vehicle, Brown. Brown then threw something back up to Cox. Soon after, Off. Philly observed the other officers arresting Cox.
 

 Officer Taylor Trish Passman of the Monroe Police Department was assigned to the Unit and also assisted with the buy-bust operation. Officer Passman stated he searched the C.I., her personal belongings, and the room and found no drugs prior to the purchase. During the operation, Officer Passman was monitoring the video surveillance equipment and was able to observe the transaction. Cox was captured on video as he walked inside of the C.I.’s room. Cox left the room with the buy money and was out of view of the monitoring equipment; however, he returned shortly thereafter and gave the C.I. the crack cocaine.
 

 Once the transaction was complete, Officer Passman gave the signal for other officers to arrest Cox. Officer Passman went to the C.I.’s room and collected the cocaine received from Cox. Officer Pass-man identified the photograph of the individual he observed sell cocaine to the C.I. The video of the transaction was played for the jury. Officer Passman also identified the buy money supplied to the C.I. prior to the transaction and testified that the money was found in Brown’s possession when he was arrested.
 

 Randall Pittman, a detective with the Unit, testified he was a part of an arrest team on the day of the operation. Detective Pittman observed the transaction via the monitoring equipment and was able to identify Cox in court. Detective Pittman searched Cox after he was taken into custody. 17Inside Cox’s pants pocket was a piece of newspaper with the C.I.’s room and telephone number written on it and a rock of cocaine.
 

 After a thorough review of the record we find that the state was able to prove delivery or physical transfer, Cox’s guilty knowledge of the controlled dangerous substance at the time of transfer, and the exact identity of the controlled dangerous substance. Of notable interest, in his brief, Cox admits that “technically, because the broadest definition of ‘distribution’ could include handing a rock of crack from one person to another, [he] is guilty.”
 

 Despite Cox’s protestations to the contrary, the state presented sufficient evidence to convict Cox of distribution of cocaine. Through the testimony of its witnesses, the state was able to prove that Cox was contacted by the C.I. and asked to deliver $100.00 of crack cocaine. Cox arrived on the scene and after taking money from the C.I., Cox returned with a substance. The substance was later tested and proven to contain cocaine. Based on the record, it was reasonable for the jury to conclude that Cox was guilty as charged. Therefore, this assignment of error is without merit.
 

 Excessive Sentence
 

 In his second assignment of error, Cox argues that his sentence is excessive based on his limited involvement in the drug transaction and that trial court failed to properly consider his impairment for drug addiction. The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial Ljudge is not required to list every aggra
 
 *935
 
 vating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Latham,
 
 41,855 (La.App. 2d Cir.02/28/07), 953 So.2d 890,
 
 writ denied,
 
 2007-0805 (La.03/28/08), 978 So.2cl 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Swayzer,
 
 43,350 (La.App. 2d Cir.08/13/08), 989 So.2d 267,
 
 writ denied,
 
 2008-2697 (La.09/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Ates,
 
 43,327 (La.App. 2d Cir.08/13/08), 989 So.2d 259,
 
 writ denied,
 
 2008-2341 (La.05/15/09), 8 So.3d 581.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.01/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.01/15/02), 805 So.2d 166;
 
 State v. Lobato,
 
 603 So.2d 739 (La.1992);
 
 State v. Robinson,
 
 40,983 (La.App. 2d Cir.01/24/07), 948 So.2d 379. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Swayzer, supra; State v. Shumaker,
 
 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.09/28/07), 964 So.2d 351.
 

 Cox was sentenced to 24 years’ imprisonment at hard labor with the first two years to be served without benefit of probation, parole, or suspension of sentence for the distribution of cocaine. Cox was sentenced concurrently to 15 years’ imprisonment at hard labor for the count of conspiracy to distribute cocaine. During the sentencing hearing, Cox was allowed to testify and told the trial court that drugs had a negative impact on his life for quite some time and he had only been involved in the transaction in an attempt to help a “friend” who he believed was an addict needing to acquire drugs. Cox also provided the trial court with a letter which was summarized during the hearing, noting that Cox believed he “allowed drugs to empower” him. Cox further wrote that he wanted to share his story to help others so they could see that drugs were only a “vicious cycle.”
 

 The trial court reviewed the presentence investigation (“PSI”) including Cox’s social history as well as his lengthy criminal history. The trial court noted that the 40-year-old defendant was classified as a fifth felony offender, one of which was a conviction for distribution of marijuana. The trial court also noted that Cox had been given numerous opportunities to rehabilitate himself but had not. At least four of Cox’s Loprevious releases on probation or parole ended unsatisfactorily because of Cox’s repeated violations of the conditions of his release. The trial court specifically stated that the results of the PSI were received and considered in accordance with La. C. Cr. P. art. 894.1 guidelines.
 

 The record clearly shows that the trial court was cognizant of the factors that
 
 *936
 
 should be considered in fashioning Cox’s sentence. The trial court painstakingly reviewed Cox’s complete history and the guidelines of La. C. Cr. P. art. 894.1. The trial court also noted Cox’s apparent resistance to following rules and regulations. Cox’s sentence is well within legislative limits. As such, we find that the sentence is not grossly disproportionate when the crime and punishment are viewed in light of the harm done to society, and in no way does the sentence shock the sense of justice.
 

 Double Jeopardy
 

 In another assignment of error, Cox argues,
 
 pro se,
 
 that he was subjected to double jeopardy when he was tried and convicted for distribution of cocaine and conspiracy to distribute cocaine. Cox indicates that he was only a “middle man of an uncertain transaction.” Cox argues that the state failed to establish a conspiracy to distribute cocaine, separate from that of being simply a principal to the distribution of cocaine.
 

 There are separate elements of the crime of distribution of cocaine that are not completed until after the conspiracy. This court has consistently held that double jeopardy does not prohibit convictions for distribution of cocaine and conspiracy to distribute cocaine.
 
 See State v. Alexander, supra; State v. Powell,
 
 42,540 (La.App. 2d Cir.10/24/07), 968 So.2d 823;
 
 State v. Kelley, supra.
 

 In
 
 State v. Kelley,
 
 836 So.2d 1243, 1247, this court reasoned:
 

 The offenses of distribution of cocaine and conspiracy to distribute cocaine do not contain identical elements. An individual is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipient. The state must show (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance. Conspiracy to distribute cocaine does not require these elements. To find one guilty of conspiracy to distribute cocaine, the state must show that there existed an agreement or combination of two or more persons for the specific purpose of transferring possession or control of the cocaine to an intended recipient.
 

 * * *
 

 In the instant case, the same evidence was not necessary for a conviction of both crimes because the crime of distribution of cocaine was completed after the conspiracy to distribute cocaine. (Internal citations omitted.)
 

 Here, through the testimony of its witnesses, the state established that Cox did in fact form an agreement with Brown to transfer cocaine to the C.I. Cox and Brown arrived together at the arranged location to deliver the cocaine. While Brown waited in his vehicle, Cox went to the C-I.’s room and obtained the money for the purchase. Cox and Brown then exchanged money and drugs. These facts clearly establish the agreement between Cox and Brown to transfer cocaine to the C.I. The latter elements of distribution of cocaine were not established until after Cox delivered the cocaine to the C.I. As stated above, there was sufficient evidence presented by the state to establish the essential elements of distribution of cocaine. Therefore, this assignment is without merit.
 

 112Ineffective Assistance of Counsel
 

 In his last assignment of error, Cox, in his
 
 pro se
 
 capacity, argues that he received ineffective assistance of counsel when his attorney failed to request a subpoena to secure the testimony of the C.I.
 
 *937
 
 who was identified during the trial. Cox contends that the C.I.’s testimony would have benefited him in that the C.I. would have testified that the defendant was only acting as a liaison between the C.I. and the “actual” drug dealer, Antonio Brown.
 

 As a general rule, a claim of ineffective assistance of counsel is more appropriately raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.09/26/07), 966 So.2d 139,
 
 writ denied,
 
 2007-2190 (La.04/04/08), 978 So.2d 325. A motion for new trial is also an accepted vehicle by which to raise such a claim.
 
 Id.
 
 Here, since the record is sufficient, we will resolve this on direct appeal in the interest of judicial economy.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,-394 (La.App. 2d Cir.09/27/95), 661 So.2d 673.
 

 The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution.
 
 State v. King,
 
 2006-1903 (La.10/16/07), 969 So.2d 1228;
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed 118by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 To establish that his attorney was ineffective, Cox first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Strickland, supra.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App. 2d Cir.04/04/07), 954 So.2d 823,
 
 writ denied,
 
 2007-1193 (La.12/07/07), 969 So.2d 629.
 

 Second, Cox must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial,
 
 ie.,
 
 a trial whose result is reliable.
 
 Strickland, supra.
 
 The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland, supra; State v. Pratt,
 
 26,862 (La.App. 2d Cir.04/05/95), 653 So.2d 174,
 
 writ denied,
 
 1995-1398 (La.11/03/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclu-sory charges will not suffice.
 
 Strickland, supra; State v. Jordan,
 
 35,643 (La.App. 2d Cir.04/03/02), 813 So.2d 1123,
 
 writ denied,
 
 2002-1570 (La.05/30/03), 845 So.2d 1067.
 

 Louisiana has a strong public policy in favor of protecting the identity of confidential informants.
 
 State v. Davis,
 
 411 So.2d 434 (La.1982);
 
 State v. Hall,
 
 549 So.2d 373 (La.App. 2d Cir.1989). The de
 
 *938
 
 fendant bears the burden of showing exceptional circumstances which would require divulging a confidential informant’s identity; the trial court has much discretion in deciding whether disclosure is warranted.
 
 State v. Oliver,
 
 430 So.2d 650 (La.1983),
 
 cert. denied,
 
 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983);
 
 State v. Babbitt,
 
 363 So.2d 690 (La.1978);
 
 State v. Hall, supra.
 
 A showing that the informant participated in the crime constitutes exceptional circumstances requiring disclosure.
 
 State v. James,
 
 396 So.2d 1281 (La.1981);
 
 State v. MacDonald,
 
 390 So.2d 1276 (La.1980);
 
 State v. Humphries,
 
 463 So.2d 804 (La.App. 2d Cir.1985);
 
 State v. Zamora,
 
 430 So.2d 274 (La.App. 5th Cir.1983),
 
 writ denied,
 
 437 So.2d 1149 (La.09/16/83).
 

 Although defense counsel could have secured the C.I.’s testimony,
 
 [1]
 
 Cox fails to show that his counsel’s decision was not part of a trial strategy, or that it fell below the standard of reasonableness. Furthermore, Cox has lisfailed to show how his defense was prejudiced by his attorney’s failure to subpoena the C.I. Arguably, even if the C.I. were subpoenaed and did in fact testify that the defendant was merely “helping” her obtain drugs from Brown, this would not overcome the evidence that established the fact that Cox did in fact distribute drugs to the C.I. and conspired with Brown to sell the drugs. Cox fails to show that but for trial counsel’s error, there was a reasonable probability the outcome of the trial would have been different. In short, Cox does not refute that the events transpired and accordingly the C.I.’s testimony cannot change Cox’s criminal conduct that was clearly established as set forth in this appeal. As such, this argument is without merit.
 

 CONCLUSION
 

 For the foregoing reasons, Allen Dale Cox’s convictions and sentences are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . We are unclear as to why the C.I.’s identity was disclosed during the trial and without objection.